[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11939
Non-Argument Calendar

_____

D.C. Docket No. 8:12-cv-02923-VMC-TGW


GREAT LAKES REINSURANCE (UK) PLC,

Plaintiff-Counter
Defendant-Appellant,

versus

KAN-DO, INC.,

Defendant-Counter
Claimant,

KAN-DO MARINE RESEARCH & PRODUCTS, INC.,

Defendant-Counter
Claimant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 25, 2016)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

This is a declaratory-judgment action initiated by an insurer, Plaintiff-Appellant Great Lakes Reinsurance (UK) PLC ("Great Lakes"), against its insured, Defendant-Appellee Kan-Do Marine Research & Products, Inc. ("Appellee")[1], asking the district court to declare that the sinking of Appellee's yacht due to mechanical failure was not covered by an "all-risk" marine insurance policy. After denying summary judgment to Great Lakes, the district court entered judgment in favor of Appellee based upon stipulated facts. The court found that Appellee met its initial burden of proving a fortuitous loss under the policy and that the policy exclusion on which Great Lakes relied to avoid coverage was ambiguous. On appeal, Great Lakes argues that Appellee failed to present evidence showing a fortuitous loss and that the policy exclusion is not ambiguous. After careful review, we affirm the district court as to the former ruling but vacate and remand for further proceedings on the application of the exclusionary provision.

**I.**

On November 5, 2012, the *Kan-Do*, a 51-foot Bluewater Motor Yacht owned by Appellee, sank in its "home slip" at Port Tarpon Marina in Tarpon Springs, Florida. The *Kan-Do* sank due to water intrusion after the bilge-pump

---

[1] Kan-Do, Inc., was originally named in the complaint but later changed in district court proceedings to the "correct" corporate name of Kan-Do Marine Research & Products, Inc.

system failed, preventing the boat from dewatering. The bilge-pump system, in turn, failed because of a blown fuse.

No one knows what caused the fuse to blow. As of October 23, 2012, the *Kan-Do*'s bilge-pump system was in good working order. In general, the *Kan-Do* was well-maintained.

When it sank, the *Kan-Do* was covered by what the parties agree is an "all-risk" marine insurance policy issued by Great Lakes to Appellee. The policy provided coverage "for accidental physical loss of, or accidental physical damage to" the *Kan-Do* during the policy period ("Coverage A"). The policy does not define "accidental physical loss." Appellee filed a claim with Great Lakes based on the sinking of the *Kan-Do*. After investigating the facts and circumstances of the loss, Great Lakes denied the claim.

Great Lakes then filed this action in the United States District Court for the Middle District of Florida, pursuant to the court's admiralty jurisdiction, *see* 28 U.S.C. § 1333, seeking a declaration that no coverage arising out of the *Kan-Do*'s sinking existed under the policy. In pertinent part, Great Lakes disclaimed coverage because it concluded that no "accidental" or "fortuitous" loss had occurred and because an exclusion otherwise barred coverage. Great Lakes relied on Exclusion "r" to Coverage A, which provided that the policy did not cover losses for the following: "Damage to the [*Kan-Do*'s] engines, mechanical and

3

electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire."[2]

The district court denied Great Lakes summary judgment, and the case was submitted to the court on stipulated facts. In finding for Appellee, the court issued two rulings, both of which are challenged by Great Lakes on appeal. First, the court ruled that the blown fuse, which caused the bilge pumps to fail, was an accidental or fortuitous event under the policy. Second, the court found that Great Lakes could not rely on Exclusion r because it was inconsistent with the grant of coverage and created ambiguity in the policy. The court entered judgment in favor of Appellee in the amount of $94,960.12. This appeal followed.

## II.

We review a district court's interpretation of a maritime insurance contract *de novo*. *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1189 n. 17 (11th Cir. 2009). In general, as a reviewing court, we must interpret an insurance policy so as to give effect to the parties' reasonable expectations

---

[2] Great Lakes initially pled two other grounds for denying coverage: (1) that the loss was due to wear and tear or gradual deterioration and (2) that the vessel was unseaworthy. Great Lakes since has withdrawn reliance on these grounds, leaving only Exclusion r at issue in this appeal.

regarding the risks and protections to which they agreed. *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 429-30 (5th Cir. 1980).[3]

## III.

Under Coverage A of the insurance policy, Great Lakes agreed to "provide coverage for accidental physical loss of, or accidental physical damage to" the Kan-Do subject to, among other provisions, any applicable exclusions. The parties have stipulated that this is an "all-risk" marine insurance policy.

In broad terms, all-risk insurance policies cover all "fortuitous" losses, "unless the policy contains a specific provision expressly excluding the loss from coverage." *Dow Chem. Co. v. Royal Indem. Co.*, 635 F.2d 379, 386 (5th Cir. Jan. 26, 1981); *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040, 1042 (4th Cir. 1979) ("[A]ll risks policies have been construed as covering all losses that are 'fortuitous.'"). "A fortuitous event . . . is an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, as the loss of a vessel, provided that the fact is unknown to the parties." *Morrison Grain Co., Inc.*, 632 F.2d at 431 (quoting Restatement of Contracts § 291, cmt. a (1932)). At the very least, fortuity excludes

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

intentional or fraudulent losses and normal wear and tear. *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 47-48 (2d Cir. 2003).

In order to recover under an all-risk insurance policy, the insured must first show (1) a fortuitous loss (2) that occurred during the policy period. *See Banco Nacional De Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982); *see also Morrison Grain Co.*, 632 F.2d at 429-31. It is undisputed that the loss occurred during the policy period. The insured's burden of showing a fortuitous loss is "not a particularly onerous one." *Morrison Grain Co., Inc.*, 632 F.2d at 430. Indeed, we have recognized that "all risks insurance arose for the very purpose of protecting the insured in those cases where difficulties of logical explanation or some mystery surround the (loss of or damage to) property." *Id.* (internal quotation marks omitted). Therefore, the insured need not prove "the precise cause of the loss or damage" to demonstrate fortuity. *Id.*

Once the insured meets the light burden of establishing that a loss occurred due to some fortuitous event or circumstance, the burden shifts to the insurer to show that the loss is excluded by some language set out in the policy. *See Banco Nacional De Nicaragua*, 681 F.2d at 1340; *Morrison Grain Co., Inc.*, 632 F.2d at 431; *Jewelers Mut. Ins. Co. v. Balogh*, 272 F.2d 889, 892 (5th Cir. 1959).

## IV.

### A. Appellee's Burden of Showing Fortuity

We affirm the district court's ruling that Appellee carried its "light" burden of establishing a fortuitous loss. Appellee established that the *Kan-do* sank because of water intrusion after the bilge-pump system failed and that the bilge-pump system failed because of a blown fuse. No one knows what caused the fuse to blow. Appellee also presented evidence that the *Kan-Do* was well-maintained, and Great Lakes does not assert in this appeal that the losses were caused by wear and tear or lack of maintenance. Under these circumstances, the blown fuse is consistent with an unexplained event that, "so far as the parties are aware, is dependent on chance." *Morrison Grain Co., Inc.*, 632 F.2d at 431 (citation omitted).

Great Lakes contends that without any "evidence showing what fortuitous event caused the fuse to fail" or evidence that the bilge-pump system failed prematurely, the insured did not meet its burden of showing fortuity because a court cannot distinguish whether the loss was caused by a fortuitous event or a non-fortuitous event. We disagree.

We have long held that requiring insurance claimants to prove the "precise cause" of loss or damage in order to recover under an "all-risk" insurance policy is "inconsistent with the broad protective purposes of 'all risks' insurance."

*Morrison Grain Co.*, 632 F.2d at 430.  Under the circumstances here, where Great Lakes does not contend that the losses were caused by wear and tear or lack of maintenance, there was no need for Appellee to present evidence on the cause of the fuse's failure.  It was enough to show that the bilge-pump system's failure was caused by a blown fuse.

Nor did Appellee have to present evidence indicating that the bilge-pump system failed prematurely.  Evidence of a premature mechanical failure may, in some instances, be persuasive to rebut an insurer's claim that the loss or damage at issue was occasioned by normal wear and tear or the lack of appropriate maintenance rather than by chance.  But Great Lakes has withdrawn any reliance on the policy exclusions for wear and tear or lack of maintenance.

In sum, we conclude that the district court properly determined that Appellee met its initial, light burden of establishing a fortuitous loss within the policy period.  Consequently, the burden shifted to the insurer, Great Lakes, to show that the loss was otherwise excluded under the policy.

### B.  Great Lakes's Burden of Showing an Exclusion

Great Lakes claims that Exclusion r in the policy applies to preclude coverage.  Exclusion r states that the following is not covered under the policy: "Damage to the Scheduled Vessel's engines, mechanical and electrical parts, ***unless caused by an accidental external event***, such as collision, impact with a

8

fixed or floating object, grounding, stranding, ingestion of a foreign object, lightning strike or fire."  (emphasis added).

Courts must enforce insurance provisions as written when they are unambiguous and understandable.  *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (applying New York insurance law).[4]  Ambiguity exists in an insurance policy when its terms are susceptible to different reasonable interpretations.  *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 254 F.3d 987, 1003 (11th Cir. 2001).  "[T]o negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon."  *Parks Real Estate Purchasing Grp.*, 472 F.3d at 42.  Any ambiguity is resolved in favor of the insured.  *Id.* at 42-43; *Dow Chemical Co.*, 635 F.2d at 386.

Here, the district court concluded that Exclusion r created ambiguity in the policy because, giving the ordinary meaning to the operative terms in both Coverage A and Exclusion r—such as "mechanical parts," "machinery," and "equipment"—"many of the same parts of the *Kan-Do* could reasonably fall under

---

[4] As mentioned in footnote 4 above, a choice-of-law provision in the policy provides that New York law governs unless entrenched principles of admiralty law apply.  In any case, the parties do not suggest that choice of law affects the inquiry into ambiguity or the effect of the exclusion.

either Coverage 'A' or Exclusion 'r,' thus creating ambiguity."  Having found ambiguity, the court construed the contract against Great Lakes and found that Exclusion r did not apply to exclude coverage.

We conclude that the court erred in finding ambiguity based on the fact that the same terms appeared in both Coverage A and Exclusion r.  "[S]imply because one provision gives a general grant of coverage and another provision limits this coverage does not mean there is an ambiguity or inconsistency between the two. This is the very nature of an insurance contract; exclusions in coverage are expressly intended to modify coverage clauses and to limit their scope."  *Ajax Bldg. Corp. v. Hartford Fire Ins. Co.*, 358 F.3d 795, 798-99 (11th Cir. 2004); *see also Central Int'l Co. v. Kemper Nat'l Ins. Cos.*, 202 F.3d 372, 374 (1st Cir. 2000) ("[U]nder ordinary principles of contract interpretation, there is little doubt that the exclusion is presumptively a qualification on the risk coverage.").

Under the terms of the policy, there is a general grant of coverage for "accidental physical loss of, or accidental physical damage to the Scheduled Vessel."  The policy defines "Scheduled Vessel" as the vessel, including the hull, machinery, electrical equipment, and "all other equipment normally required for the operation and maintenance of the vessel."  Coverage A states that coverage is "subject to" certain exclusions, including damage to "engines, mechanical and electrical parts" unless caused by an "accidental external event."  All told, the

10

policy facially provides coverage for "accidental physical damage" to engines and mechanical and electrical parts *only if* the damage was caused by an "accidental external event."  Put differently, the coverage for engines and mechanical components appears to be narrower than the general all-risk coverage because it requires an external cause.  *Cf. Morrison Grain Co., Inc.*, 632 F.2d at 430 (stating that the insured was not required "to demonstrate that the loss or damage was occasioned by an external cause" to establish fortuity); *City of Burlington*, 332 F.3d at 48 (noting that many courts have rejected "an implicit external-cause requirement in all-risk policies").  As a result, we do not find the policy to be ambiguous for the reason given by the district court.[5]

Appellee responds that the policy is ambiguous because "accidental external event" is not defined in the policy, so it is left with little guidance as to what is being excluded.  So, for example, Appellee asserts, it is arguable whether water intrusion as a result of the bilge-pump system's failure qualifies as an "external" event.  Great Lakes replies that water intrusion was not the relevant "cause," but rather the blown fuse or the failed bilge-pump system was, neither of which Appellee contends is an "external event."  The district court did not address

---

[5] Notably, despite the district court's adoption of its position on ambiguity from the Appellee below, Appellee does not defend the court's reasoning on appeal and instead contends that "accidental external event" is ambiguous, an issue the district court did not reach.

11

whether "accidental external event" or other specific terms in the exclusion itself were ambiguous.

Although contractual ambiguity is a question of law that we may resolve in the first instance, we think the better course of action in these circumstances is simply to vacate the district court's ruling with respect to Exclusion r and remand for further proceedings. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 & n.4 (11th Cir. 2001) (noting our preference for the district court to address issues in the first instance). As we understand the exclusionary provision at issue, and as represented by Great Lakes in its briefing, the scope of the exclusion (the "Scheduled Vessel's engines, mechanical and electrical parts") is narrower than the extent of the policy's coverage (the "Scheduled Vessel" itself). Additional fact finding therefore may be appropriate to determine the extent of damages. Because further proceedings are required regardless, we leave any arguments respecting additional sources of ambiguity in the policy for the district court to address in the first instance.

## V.

In sum, we affirm the district court's ruling that Appellee established a fortuitous loss covered by the all-risk marine insurance policy. However, we vacate the court's determination that the exclusion on which Great Lakes relied to

avoid coverage was ambiguous.  We remand for further proceedings with respect to the application of Exclusion r.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**